**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re** | ) | **Chapter 11** |
| | ) | |
| **WOODLAWN COMMUNITY** | ) | **Case No. 18-29862** |
| **DEVELOPMENT CORP., an Illinois** | ) | |
| **not for profit corporation,** | ) | **Hon. Carol A. Doyle** |

## DEBTOR'S PLAN OF REORGANIZATION

WOODLAWN COMMUNITY DEVELOPMENT CORP., an Illinois not for Profit Corporation ("Woodlawn") Debtor and Debtor-in-Possession, proposes the following Plan of Reorganization (" Plan"), pursuant to Chapter 11 of Title 11 of the United States Code (hereinafter the "Bankruptcy Code" or "Code"):

## ARTICLE I

## CONSTRUCTION

1.1     Where not inconsistent or in conflict with the provisions of the Plan, the words and phrases used herein shall have the meaning ascribed thereto in the Bankruptcy Code and Rules.

1.2     Section captions used in the Plan are for convenience only, and shall not effect the construction of the Plan

1.3     The first letters of terms defined in the Plan are capitalized.

1

## ARTICLE II

## DEFINITIONS

For the purpose of this Plan, the following terms shall have the meanings set forth

below (such meanings to be equally applicable to the singular and the plural forms of the

terms defined, unless the context otherwise requires):

2.1    **"Adequate Protection Payments"** means all payments received by the

Internal Revenue Service pursuant to the Interim Cash Collateral Orders entered in this

Case.

2.2    **"Administrative Claim"** or **"Administrative Expense Claim"** means any

right to payment constituting a cost or expense of administration of this bankruptcy case

under sections 503(b) and 507(a)(1) including, without limitation, (a) any actual, necessary

costs and expenses of preserving the bankruptcy estate, (b) any indebtedness or

obligations incurred or assumed by the Debtor in the ordinary course of business during the

course of this bankruptcy case, (c) any Professional Fees and Expenses, whether fixed

before or after the Effective Date, (d) any fees or charges assessed against the bankruptcy

estate under section 1930, Chapter 123, title 28, United States Code.

2.3    **"Allowed"** means, with reference to any Claim (including any Administrative

Expense Claim), (a) any Claim against the Debtor, proof of which was filed within the

applicable period of limitation fixed by the Bankruptcy Court in accordance with Rule

3003(c)(3) of the Bankruptcy Rules (i) as to which no objection to the allowance thereof has

been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy

Code, the Bankruptcy Rules, or a Final Order, (ii)as to which no timely objection has been

interposed based upon 11 U.S.C. § 502(d), (iii) as to which an objection had been interposed, to the extent such Claim has been allowed (whether in whole or in part) by a Final Order, and (iv) which is not listed as disputed, unliquidated or contingent on the Debtor's schedules, (b) if no proof of such Claim was filed timely or was withdrawn, any Claim against the Debtor which is listed by the Debtor in its schedules, as such schedules may be amended from time to time in accordance with Rule 1009 of the Bankruptcy Rules, as liquidated in amount and not contingent, (c) any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code and allowed in accordance with section 502(b) of the Bankruptcy Code, (d) any Claim allowed under or pursuant to the terms of this Plan, or (e) any Claim that has been allowed by a Final Order.

2.4    **"Bankruptcy Code"** means title 11 of the United States Code, as amended, in effect and applicable to the Debtor's bankruptcy case.

2.5    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, having jurisdiction over this case and the matters reserved in this Plan.

2.6    **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure prescribed by the Supreme Court of the United States and modified from time to time pursuant to 28 U.S.C. §2075.

2.7    **"Bar Date"** means the last day for filing proofs of claim against the Debtor as fixed by order of the Court.

3

2.8    **"Berry Manor"** means the Edwin Berry Manor, a low income apartment building located at 737 E. 69th St., Chicago, Illinois and owned by Woodlawn Housing Development Corp.

2.9    **"Business Day"** means any day on which banks are open to carry on their ordinary commercial banking business in Chicago, Illinois.

2.10    **"Case"** means the Chapter 11 case of Woodlawn, Bankruptcy No. 18-29862, filed October 24, 2018.

2.11    **"Cash"** means legal tender of the United States, including amounts on deposit at financial institutions in checking accounts, money market accounts and the like.

2.12    **"Cause of Action"** or **"Causes of Action"** means all Claims, rights, actions, suits, causes of action, liens, judgments and damages belonging to the Debtor or its bankruptcy estate and any and all liabilities, obligations and debts owing to the Debtor or its bankruptcy estate, in each case whether known or unknown, in law, equity or otherwise, including, but not limited to, those causes of actions under sections 544, 548, 549, 550 and 553 of the Bankruptcy Code and specifically all claims with respect to Lincoln South Central and Dr. Leon D. Finney, Jr.

2.13    **"CCLF"** means the Chicago Community Loan Fund.

2.14    **"CCLF Secured Claim"** means the Secured Claim of CCLF in the amount of $822,888.00 which is secured by a security interest in a $500,000 Development Loan Note made by South Park Plaza LP and a $1,805,000 Developer Loan of Donation Tax Credit made by South Park Plaza LP and payable to the Debtor.

2.15    **"CHA"** means the Chicago Housing Authority.

4

2.16   **"City of Chicago Statutory Lien Claims"** means the secured statutory lien claims of the City of Chicago for water and sewer charges provided to various parcels of real estate owned by the Debtor.

2.17   **"Claim"** means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.18   **"Claimant"** means the holder of a Claim against the Debtor or the Estate.

2.19   **"Class"** means a grouping of substantially similar Claims or Interests as designated in Article V of the Plan.

2.20   **"Confirmation"** means the process undertaken by the Bankruptcy Court in accordance with section 1129 of the Bankruptcy Code to confirm a Plan.

2.21   **"Confirmation Date"** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

2.22   **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan, or any amendment or modification thereto, pursuant to section 1129 of the Bankruptcy Code, and any findings of fact or conclusions of law contained in the Confirmation Order or a separate document entered substantially contemporaneously therewith.

2.23    **"Consummation**" means completion of all Distributions to be made under the

Plan.

2.24    **"Cure Claim"** means any Claim resulting from the Debtor's obligation to cure

defaults in connection with the assumption under section 365 of the Bankruptcy Code of an

executory contract or unexpired lease under Article XI of this Plan.

2.25    **"Creditors"** means all entities with Claims against the Debtor or the Estate.

2.26    **"Debt"** means liability on a Claim.

2.27    **"Debtor"** means Woodlawn Community Development Corp.

2.28    **"Deficiency Claim"** means the balance due on the claim of

2.29    **"Disbursing Agent"** means the Reorganized Debtor., or such Entity as may

be appointed or designated to fulfill these duties.

2.30    **"Disclosure Statement"** means the document and all exhibits, annexed

thereto (together with any letters of recommendation or solicitation approved by the

Bankruptcy Court) filed in connection with the Debtor's case pursuant to section 1125 of the

Bankruptcy Code, and approved by the Bankruptcy Court as containing adequate

information as that term is defined in section 1125(a)(1) of the Bankruptcy Code, as may be

amended or modified from time to time by any duly authorized amendment or modification.

2.31    **"Disputed Claim"** means any claim (other than an Allowed Claim) which is

either (a) a claim which has been scheduled by the Debtor, or (b) a claim which is the

subject of a proof of claim which has been filed with the Bankruptcy Court, as to which

scheduled claim the Debtor has indicated a dispute, or as to which scheduled or filed claim

6

a timely objection to the allowance thereof has been filed by a party entitled to make such an objection, but as to which the Bankruptcy Court has not yet entered a Final Order.

2.32     **"Distribution(s)"** means the property (including payments) required by the Plan to be provided to the holders of Allowed Claims.

2.33     **"Dr. Leon D. Finney Jr."** means the former CEO and President of the Debtor and the owner of Lincoln South Central as well as the President of East Woodlawn Residential Corp., and Woodlawn Housing Development Corp.

2.34     **"Effective Date"** means the first Business Day occurring on or after the fifteenth (15th) day after the Confirmation Date; provided, however, that if a stay of the Confirmation Order is in effect on such first Business Day, then the Effective Date shall be the first Business Day thereafter on which, if the Confirmation Order has not been vacated, no stay of the Confirmation Order is in effect.

2.35     **"Estate"** means the bankruptcy estate created upon commencement of the Case pursuant to Section 541(a) of the Code.

2.36     **"East Woodlawn Residential Corp."** means a not for profit corporation which is the owner of a residential apartment building known as the Farrell House.

2.37     **"Farrell House"** means the Father Martin Farrell House, a low income apartment building located at 1415 E. 65th St., Chicago, Illinois and owned by the East Woodlawn Residential Corp.

2.38     **"Fee Application"** means an application of a Professional under section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in this case.

7

2.39   **"Final Order"** means an order or judgment of the Bankruptcy Court, as to which the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for re-argument or rehearing shall then be pending, provided, however, if an appeal, or writ of certiorari, re-argument or rehearing thereof has been filed or sought, such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall have expired; provided, further, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

2.40   **"General Unsecured Claims"** means a Claim or Claims that is/are not an Administrative Expense Claim, Secured Claim or a Priority Claim.

2.41   **"Glenview Financial"** means Glenview Financial Services Inc.

2.42   **"Glenview Financial Secured Claim"** means the Secured Claim asserted in this case by Glenview Financial  in the amount of $310,067.20 which is secured by a First Mortgage encumbering the real estate located and commonly known as 1500-1528 E. 63rd St., Chicago, Illinois.

2.43   **"Impaired"** shall have the meaning provided in Section 1124 of the Code.

2.44   **"Initial Distribution Date"** means a date that is not less than ten (10) business days after the Effective Date

2.45   **"Lakeside Bank Secured Claim"** means the Secured Claim asserted in this case by Lakeside Bank in the aggregate amount of $633,301.08 evidenced by three (3) separate Promissory Notes which are cross-collateralized and secured by a First Mortgage and Assignment of Rents encumbering the following parcels of real estate: (a) 4123-57 S. Calumet Ave., Chicago, Illinois; (b) 4108 S. Martin Luther King Dr., Chicago, Illinois; (c) 4112 S. Martin Luther King Dr., Chicago, Illinois; and (d) 221 S. St. Street, Chicago, Illinois a/k/a 1E.Cermak Rd., Chicago, Illinois.

2.46   **"Lien"** has the meaning provided by Section 101(37) of the Code.

2.47   **"Lincoln South Central"** means Lincoln South Central Corp, which is the lessee under a Master Lease, as amended, with respect to the property owned by the Debtor and commonly known as 1500-1528 E. 63rd Street, Chicago, Illinois.

2.48   **"LISC"** means Local Initiative Support Corporation.

2.49   **"LISC Deficiency Claim"** means that portion of the LISC Secured Claim which exceeds the value of the properties encumbered by LISC's First and Junior Mortgages.

2.50   "**LISC Secured Claim**" means the Secured Claim asserted in this case by LISC in the aggregate amount of $3,337,749.53 evidenced by a Line of Credit Agreement, as amended, together with two (2) Promissory Notes, which reflect an increase in the original Line of Credit.  The Line of Credit, as amended, and the two (2) Promissory Notes are cross-collateralized and secured by a First Mortgage and Assignment of Rents encumbering the following parcels of real estate: (a) 1140 E. 63rd St., Chicago, Illinois; (b) 1166 E. 63rd St., Chicago, Illinois; (c) 6232 S. Woodlawn Ave., Chicago, Illinois; (d) 6239 S.

University Avenue Chicago, Illinois; (e) 6241 South University Avenue, Chicago, Illinois; (f)

6310 South Woodlawn Ave., Chicago, Illinois; (g) 6521 S. Evans Ave., Chicago, Illinois;  (h)

6445 S. Kimbark Ave.,Chicago, Illinois; and (j) 6537 S. Maryland Ave., Chicago, Illinois;

and (j) a Junior Mortgage encumbering the real estate located at 4108 and 4112 S. Martin

Luther King Dr., Chicago, Illinois, and  221 S. St. Street, Chicago, Illinois a/k/a 1E.Cermak

Rd., Chicago, Illinois.

2.51   **"Miner Barnhill"** means Miner, Barnhill  & Galland P.C.

2.52   **"Miner Barnhill Secured Claim"** means the Secured Claim asserted in this

case by Miner Barnhill in the amount of $330,231.15 which is secured by a security interest

in the Amended and Restated Surplus Cash Note 1 made by Jackson Parkside Partners,

LP payable to the Debtor.

2.53   **"Order of Confirmation"** means the order of the Court confirming the Plan

pursuant to Section 1129 of the Code.

2.54   **"Personal Injury Claims"** means a claim which is based upon a physical

injury to the Claimant.

2.55   **"Petition Date"** means the date on which the Debtor filed its Chapter 11

petition with the Clerk of the Court, October 24, 2018.

2.56   **"Plan"** means this Plan of Reorganization of the Debtor pursuant to Chapter

11 of the United States Bankruptcy Code, any exhibits annexed hereto and any documents

delivered in connection herewith, as the same may be amended or modified from time to

time by any duly authorized amendment or modification.

2.57   **"Priority Claim"** means any claim entitled to priority treatment pursuant to section 507(a) of the Code, except for Administrative Claims and fees payable under 28 U.S.C. § 1930.

2.58   **"Professional"** means a person retained to be compensated pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

2.59   **"Professional Fees and Expenses"** mean the fees and expenses incurred by a Professional rendering services for the Debtor and its estate, which fees and expenses are eligible for compensation and/or reimbursement under the applicable provisions of the Bankruptcy Code

and Bankruptcy Rules.

2.60   **"Property of the Estate"** has the meaning provided by Section 541 of the Code.

2.61   **"Pro Rata"** means proportionately so that the ratio of the amount of the Distribution made on account of a particular Allowed Claim to the Distributions made on account of all Allowed Claims of the Class in which the particular Allowed Claim is included is the same as the ratio of the amount of such particular Allowed Claim to the total amount of Allowed Claims of the Class of which such particular Allowed Claim is included.

2.62   **"Reorganized Debtor"** means the Debtor following (1) entry of the Confirmation Order and (2) the occurrence of the Effective Date.

2.63   **"Unclaimed Property"** means any Distributions which are unclaimed ninety (90) days following the date of distribution. Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a

proper forwarding address, (b) funds for checks that have not been paid, (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of the proper address with which to mail or deliver such property, and (d) interest on cash constituting Unclaimed Property.

2.64    **"United Fidelity Bank"** means United Fidelity Bank, fsb as successor in interest to Highland Community Bank.

2.65    **"United Fidelity Bank Secured Claim"** means the Secured Claim asserted in this case by United Fidelity Bank in the aggregate amount of $1,788,657.83 evidenced by a Promissory Note, as amended, which is secured by a First Mortgage and Assignment of Rents encumbering the following parcels of real estate: (a) 6121 S. Rhodes, Chicago, Illinois; and (b) 1437-47 E. 65th St., Chicago, Illinois.

2.66    **"Woodlawn"** means the Debtor.

2.67    **"Woodlawn Housing Development Corp."** means a not for profit corporation which is the owner of a residential apartment building known as Berry Manor.

## ARTICLE III

## CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions apply to this Plan:

3.1    To the extent any Claim or portion of any Claim of a Creditor is a Disputed Claim, or is otherwise contingent or unliquidated, or has not been allowed by the Court, the Disbursing Agent may either reserve and segregate such Distribution under the Plan as is sufficient to provide for each of such Claims under the Plan, ask the Court to determine an

appropriate reserve, or ask the Court to estimate for purposes of allowance any contingent or unliquidated Claim which would otherwise delay the administration of the Case.

3.2     Pursuant to Section 1123 of the Code, Article V of the Plan designates twelve 12) classes of Claims.  As set forth below, Administrative Claims of the kind specified in Sections 507(a)(1) of the Code, have not been classified and are excluded from the classes set forth in Article V of the Plan, in accordance with Section 1123(a)(1) of the Code. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim  qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim or an Allowed Secured Claim in that Class. Multiple proofs of claim filed by a Creditor which qualify for inclusion within the same Class shall be aggregated and, if allowed, shall constitute a single Allowed Claim.

## ARTICLE IV

## ADMINISTRATIVE EXPENSES AND UNCLASSIFIED CLAIMS

4.1     The holders of Administrative Claims entitled to priority under Section 507(a)(1) of the Code, and entities entitled to payments under Section 546(c) or 553 of the Code, and entities entitled to payment of Administrative Expense Claims pursuant to Section 503 and 507(a) of the Code shall receive on account of such Administrative Claims or Administrative Expense Claims, cash in the amount of such Administrative Claims or

13

Administrative Expenses Claims on or before the Effective Date of the Plan or as soon

thereafter as is practicable.

4.2    Notwithstanding the foregoing, Professionals employed at the expense of the

Estate, and any entities which may be entitled to an allowance of fees and expenses from

the Estate pursuant to Sections 503(b)(2) through (6) of the Code, shall receive cash in the

amount awarded to such Professionals and entities as soon as practicable after an order is

entered by the Court approving such award pursuant to Sections 330 or 503(b)(2) through

(6) of the Code, unless any such Professional or other entity consents prior to Confirmation

to other treatment.

## ARTICLE V

## DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

5.1    For purposes of all Confirmation issues, including, without limitation, voting,

Confirmation and distribution, except as otherwise provided herein, all Claims (except for

Administrative Claims and Administrative Expense Claims) are classified in the following

chart:

| Class | Class Name | Status |
|-------|-----------|--------|
| Class 1 | CCLF Secured Claim | Unimpaired |
| Class 2 | City of Chicago Secured Statutory Claims | Unimpaired |
| Class 3 | Glenview Financial Secured | Unimpaired |
| Class 4 | Lakeside Bank Secured | Unimpaired |
| Class 5 | LISC Secured Claim | Impaired |
| Class 6 | Miner Barnhill Secured Claim | Unimpaired |
| Class 7 | United Fidelity Bank Secured | Impaired |

| Class 8 | Secured/Priority Tax Claims | Impaired |
| Class 9 | LISC Deficiency Claim | Impaired |
| Class 10 | United Fidelity Bank | Impaired |
| Class 11 | Personal Injury Claims | Impaired |
| Class 12 | General Unsecured Creditors | Impaired |

5.2   **Class 1—CCLF Secured Claim**.  Class 1 shall consist of the secured claim of

CCLF in the amount of in the amount of $822,888.00 which is secured by a security interest

in a $500,000 Development Loan Note made by South Park Plaza LP and a $1,805,000

Developer Loan of Donation Tax Credit made by South Park Plaza LP and payable to the

Debtor. This Claim is fully secured and the claim is unimpaired.

5.3   **Class 2—City of Chicago Secured Statutory Claim**.  Class 2 shall consist of

the aggregate secured claims of the City of Chicago in the total amount of $41,0492.8

which claims are secured by a statutory lien for water and sewer services provided to

various properties of the Debtor.  The Claims are fully secured and are unimpaired.

5.4   **Class 3—Glenview Financial Secured Claim.**  Class 3 shall consist of the

secured claim of Glenview Financial in the amount of $310,067.20 which is secured by a

First Mortgage encumbering the real estate located and commonly known as 1500-1528 E.

63rd St., Chicago, Illinois.  The Claim is fully secured and is unimpaired.

5.5  **Class 4—Lakeside Bank Secured Claim.**  Class 4 shall consist of the secured

claim of Lakeside Bank in the aggregate amount of $633,301.08 evidenced by three (3)

separate Promissory Notes which are cross-collateralized and secured by a First Mortgage

and Assignment of Rents encumbering the following parcels of real estate: (a) 4123-57 S.

15

Calumet Ave., Chicago, Illinois; (b) 4108 S. Martin Luther King Dr., Chicago, Illinois; (c) 4112 S. Martin Luther King Dr., Chicago, Illinois; and (d) 221 S. State. Street, Chicago, Illinois a/k/a 1E.Cermak Rd., Chicago, Illinois. This Claim is fully secured and is unimpaired.

5.6    **Class 5—LISC Secured Claim** Class 5 shall consist of the secured claim of LISC in the aggregate amount of $3,337,749.53 evidenced by a Line of Credit Agreement, as amended, together with two (2) Promissory Notes, which reflect an increase in the original Line of Credit.  The Line of Credit, as amended, and the two (2) Promissory Notes are cross-collateralized and secured by a First Mortgage and Assignment of Rents encumbering the following parcels of real estate: (a) 1140 E. 63rd St., Chicago, Illinois; (b) 1166 E. 63rd St., Chicago, Illinois; (c) 6232 S. Woodlawn Ave., Chicago, Illinois; (d) 6239 S. University Avenue Chicago, Illinois; (e) 6241 South University Avenue, Chicago, Illinois; (f) 6310 South Woodlawn Ave., Chicago, Illinois; (g) 6521 S. Evans Ave., Chicago, Illinois;  (h) 6445 S. Kimbark Ave., Chicago, Illinois; and (j) 6537 S. Maryland Ave., Chicago, Illinois; and (j) a Junior Mortgage encumbering the real estate located at 4108 and 4112 S. Martin Luther King Dr., Chicago, Illinois and  221 State Street, Chicago, Illinois a/k/a 1E.Cermak Rd., Chicago, Illinois The Claim is not fully secured and is impaired.

5.7    **Class 6—Miner Barnhill Secured Claim.**   Class 6 shall consist of the secured claim of Miner Barnhill in the amount of $330,231.15 which is secured by a security interest in the Amended and Restated Surplus Cash Note 1 made by Jackson Parkside Partners, LP payable to the Debtor.  The claim is fully secured and is unimpaired.

5.8    **Class 7–United Fidelity Bank Secured Claim.**   Class 7 shall consist of the secured claim of United Fidelity Bank in the aggregate amount of $1,788,657.83 evidenced

by a Promissory Note, as amended, which is secured by a First Mortgage and Assignment of Rents encumbering the following parcels of real estate: (a) 6121 S. Rhodes, Chicago, Illinois, and (b) 1437-47 E. 65th St., Chicago, Illinois.  The Claim is not fully secured and is impaired.

5.9      **Class 8-Secured/Priority Tax Claims.**  Class 8 shall consist of the allowed secured/ priority tax claims of the Internal Revenue Service and the Illinois Department of Revenue existing on the Effective Date of Confirmation, adjusted through the Claims objection process and including appropriate Interest.  The Internal Revenue Service asserts that it holds a $1,255,373.52 Secured Claim and a $2,744,065.03 Priority Claim based on unpaid tax liabilities.  The Illinois Department of Revenue asserts that it holds a $33,598.71 Priority Claim based on unpaid tax liabilities.  The Reorganized Debtor will satisfy the Class 8 Tax Claims by a payment no later than fourteen (14) business days after August 1, 2019 in an amount equal to 60% of the Allowed Secured/ Priority Claims.  The balance of the Secured/Priority Claims shall be payable in installments over a period of not more than five (5) years after the Petition Date, pursuant to section 1129(a)(9)(c) of the Bankruptcy Code. The Class 8 Claims are impaired.

5.10      **Class 9-LISC Deficiency Claim.**  Class 9 shall consist of the Deficiency claim of LISC which shall be determined by the difference between LISC's $3,337,749.53 claim and the fair market value of the properties encumbered by the First and Junior mortgages held by LISC.  The Claim is impaired.

5.11      **Class 10—United Fidelity Bank Deficiency Claim.**  Class 10 shall consist of the Deficiency Claim of United Fidelity Bank which shall be determined by the difference

between United Fidelity Bank's $1,788,657.83 claim and the fair market value of the properties encumbered by the First Mortgages held by United Fidelity Bank.  The Claim is impaired.

5.12    **Class 11-Personal Injury Claims.**  Class 10 shall consist of the Personal Injury Claims against the Debtor the amount of which are unknown.  The Personal Injury Claims are impaired.

5.13    **Class 12—General Unsecured Claims**.  Class11 shall consist of all General Unsecured Claims in the amount of $5,735,978.00 which are defined to include all Claims that are not otherwise classified or described by this Plan.  The General Unsecured Claims are impaired.

**ARTICLE VI**

**TREATMENT OF UNIMPAIRED CLASSES**

6.1    **Unimpaired Classes**.  Classes 1, 2, 3, 4, and 6 are unimpaired.

6.2    **Treatment of Class 1**.  The Class 1 Claim of CCLF is fully secured.  On the Effective Date, the Reorganized Debtor shall make monthly payments in accordance with the Pre-petition loan documents.  On or about August 1, 2019, the Reorganized Debtor shall receive donations from the sale of Berry Manor and Farrell House in the approximate amount of $2.8 million dollars.  Within fourteen (14) business days from the receipt of all net proceeds from the sale of Berry Manor and Farrell House, the Reorganized Debtor shall pay all arrears with respect to the Class 1 Claim of CCLF.

6.3    **Treatment of Class 2.**  On or about August 1, 2019, the Reorganized Debtor shall receive donations from the sale of Berry Manor and Farrell House in the approximate

18

amount of $2.8 million dollars.  Within fourteen (14) business days from the receipt of the net proceeds from the sale of Berry Manor and Farrell House, the Reorganized Debtor shall pay in full all Class 2 claims.

6.4    **Treatment of Classes 3 and 4.**  The Class 3 Claim of Glenview Financial and the Class 4 Claim of Lakeside Bank are fully secured.  On the Effective Date, the Reorganized Debtor shall make monthly payments in accordance with the Pre-petition loan documents.  On or about August 1, 2019, the Reorganized Debtor shall receive donations from the sale of Berry Manor and Farrell House in the approximate amount of $2.8 million dollars.  Within fourteen (14) business days from the receipt of all net proceeds from the sale of Berry Manor and Farrell House, the Reorganized Debtor shall pay all arrears with respect to the Class 3 and 4 Claimants.

6.5    **Treatment of Class 6.**

(a) The Class 6 Claim is secured by a security interest in the Amended and Restated Surplus Cash Note 1 made by Jackson Parkside Partners, L.P. to the Debtor. This Claim shall be paid, in full, within five (5) business days from receipt by the Reorganized Debtor of payment of the Promissory Notes.

## ARTICLE VII

## TREATMENT OF IMPAIRED CLASSES

7.1    **Impaired Classes**.  Classes 5, 7 8, 9, 10, 11 and 12 are impaired under the Plan.

7.2    **Treatment of Class 5—LISC Secured Claim**.  In full satisfaction, settlement, release and discharge of LISC Secured Claim, LISC shall receive payment of 100% of its

Allowed Secured Claim in the following manner:  Fourteen days from the Effective Date of

the Plan, the Reorganized Debtor shall issue a Promissory Note payable to LISC in the

principal amount equal to the fair market value of properties encumbered by LISC's Pre-

petition mortgages.   The Note shall provide for monthly payments which shall accrue

interest at 6% per annum and be amortized over 20 years with a final balloon payment five

(5) years from the anniversary date of the Note. The Note shall be secured by the Pre-

petition Mortgages and Assignment of Rents which shall be released upon payment, in full,

of the Promissory Note. Alternatively, in the event that the Class 5 Creditor makes an

election under § 1111(b) of the Bankruptcy Code, then within fourteen (14) days from the

Effective Date of the Plan, the Reorganized Debtor shall issue a Promissory Note in the

principal amount of $3,337,749.53 payable to LISC.  The Note shall be payable in 360

monthly installment payments of principal and interest with interest accruing at 3.5% per

annum.  The Note will be secured by the Pre-petition Mortgages and Assignment of Rents

of the Class 5 Creditor which shall be released, upon payment in full, of the Note.  If the

Class 5 Creditor makes a § 1111(b) election, no payments shall be made to the Class 5

Creditor under Class 9 and 12.

7.3   **Treatment of Class 7—United Fidelity Bank Secured Claim.**   In full

satisfaction, settlement, release and discharge of United Fidelity Bank's Secured Claim,

United Fidelity Bank shall receive payment of 100% of its Allowed Secured Claim in the

following manner:  Fourteen days from the Effective Date of the Plan, the Reorganized

Debtor shall issue a Promissory Note payable to United Fidelity Bank in the principal

amount equal to the fair market value of properties encumbered by United Fidelity Bank's

Pre-petition mortgages.  The Note shall provide for monthly payments which shall accrue

interest at 6% per annum and be amortized over 20 years with a final balloon payment five (5) years from the anniversary date of the Note. The Note shall be secured by the Pre-petition Mortgages and Assignment of Rents which shall be released upon payment, in full, of the Promissory Note. Alternatively, in the event that the Class 7 Creditor makes an election under § 1111(b) of the Bankruptcy Code, then within fourteen (14) days from the Effective Date of the Plan, the Reorganized Debtor shall issue a Promissory Note in the principal amount of $1,788,657.83 payable to United Fidelity Bank.  The Note shall be payable in 360 monthly installment payments of principal and interest with interest accruing at 3.5% per annum.   The Note will be secured by the Pre-petition Mortgages and Assignment of Rents of the Class 7 Creditor which shall be released, upon payment in full, of the Note.  If the Class 7 Creditor makes a § 1111(b) election, no payments shall be made to the Class 7 Creditor under Class 9 and 12.

7.4    **Treatment of Class 8—Secured/Priority Tax Claims**.   In full satisfaction, settlement, release and discharge of Internal Revenue Service and Illinois Department of Revenue Secured/Priority Tax Claims, the Reorganized Debtor will satisfy the Class 8 Tax Claims by a payment no later than fourteen (14) business days after the receipt by the Reorganized Debtor of all proceeds from the sale of Barry Manor and Farrell House, an amount equal to 60% of the Allowed Secured/Priority Claims.   The balance of the Secured/Priority Claims shall be payable in installments, with interest, over a period of not more than five (5) years after the Petition Date, pursuant to section 1129(a)(9)(c) of the Bankruptcy Code.

.      7.5      **Treatment of Class 9—LISC Deficiency Claim.**  Within fourteen days from

the receipt by the Reorganized Debtor of all proceeds from the sale of Barry Manor and

Farrell House, the Claimant shall receive a lump sum payment of $300,000. The balance of

the Deficiency Claim shall be treated as a General Unsecured Claim.

7.6      **Treatment of Class 10—United Fidelity Bank Deficiency Claim.**  Within

fourteen days from the receipt by the Reorganized Debtor of all proceeds from the sale of

Barry Manor and Farrell House, the Claimant shall receive a lump sum payment of

$150,000.  The balance of the Deficiency Claim shall be treated as a General Unsecured

Claim.

7.7      **Treatment of Class 11—Personal Injury Claims.**   To the extent that

Personal Injury claims are not covered by Insurance, and in full satisfaction, settlement,

release and discharge of such claims, each holder of a Personal Injury Claim which is not

otherwise covered by insurance, shall receive a payment of 50% of such portion of the

Claim as may be Allowed.

7.8      **Treatment of Class 12—General Unsecured Claims**.  In full satisfaction,

settlement, release and discharge of the General Unsecured Claims, the holders of each

General Unsecured Claim shall receive payment of 15% of such portion of the Claim as

may be Allowed.  The Disbursing Agent shall remit these payments from the Debtor's

available funds over a term running five (5) years from the Effective Date, with (1) each

Allowed General Unsecured Claim to be amortized with equal quarterly payments and (2)

three percent (3%) interest accruing thereon.  No distributions shall be made on account of

a General Unsecured Claim until (1) such Claim has been Allowed, and (2) no portion of

such Claim is Disputed.   In the event a General Unsecured Claim is Allowed (or its

Disputed nature resolved) after distributions have been made to other holders of General

Unsecured Claims, a catch-up distribution shall be made to the holder of the newly Allowed

General Unsecured Claim on the next regularly scheduled distribution date.

## ARTICLE VIII

### ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT

### OF REJECTION BY ONE OR MORE CLASSES OR CRAMDOWN

8.1     **Classes Entitled to Vote**.  Each impaired class of Claims that will receive

distributions under the Plan shall be entitled to vote separately to accept or reject the Plan.

 Classes 5, 7, 8, 9, 10, 11 and 12 are impaired and entitled to vote.

8.2     **Class Acceptance Requirement**.  An impaired class of Claims shall have

accepted the Plan if accepted by at least two-thirds (2/3) in amount and more than one-half

(1/2) in number of the Allowed Claims in such class that have voted on the Plan.

8.3     **Cramdown**. Notwithstanding the rejection or deemed rejection of the Plan by

any class of Claims, the Debtor hereby requests that the Bankruptcy Court confirm the Plan

in accordance with section 1129(b) of the Bankruptcy Code.

## ARTICLE IX

### MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

9.1     **Funding the Plan—Payment of Administrative Claims and Expenses**.

Distributions in cash shall be made to Allowed Administrative Claims and Administrative

Expense Claims on the Effective Date of the Plan to satisfy such claims in full. The Funds required for the payment of these claims shall be realized from the net proceeds received from the sale of Berry Manor and Farrell House.  Berry Manor and Farrell House are owned and operated by separate not for profit corporations, Woodlawn Housing Development, Corp and East Woodlawn Residential Corp., respectively.  Both corporations have either a pending contract or are in contract negotiations for sale of the apartment buildings.  The President of each of the corporations is Dr. Leon D. Finney Jr.  Dr. Finney shall issue a written letter of commitment from both corporations that upon the sale and closing of apartment buildings, each respective corporation will donate the net proceeds of sale to the Reorganized Debtor.

   9.2 **Funding the Plan—Payment of Class 1, 2, 3, and 4**.  Distribution in cash to pay all of the arrears with respect to the Allowed Secured Claims of CCLF, City of Chicago, Glenview Financial and Lakeside Bank shall be from the net proceeds received by the Reorganized Debtor from the sale of Berry Manor and Farrell House.  The regular monthly mortgage payments and post-petition sewer/water charges will be funded by the regular income of the Reorganized Debtor and, in particular the management fees it receives from CHA.

   9.3 **Funding the Plan—Payment of Class 5**.  The Reorganized Debtor's future income from its management fees shall be used to pay the Allowed Secured Claim of LISC. The Reorganized Debtor shall also refinance the balance of the Note evidencing the LISC Secured Claim so that upon the 5th year after the issuance of the Note, the Secured Claim is paid in full.

24

9.4    **Funding the Plan—Payment of Class 7**.  The Reorganized Debtor's future income from its management fees shall be used to pay the Allowed Secured Claim of United Fidelity Bank.  The Reorganized Debtor shall also refinance the balance of the Note evidencing the United Fidelity Bank Secured Cliamim so that upon the 5th year after the issuance of the Note, the Secured Claim is paid in full.

9.5    **Funding the Plan—Payment of Class 8**.  Distribution in cash to pay 60% of the Secured/Priority Claims of the Internal Revenue Service and the Illinois Department of Revenue shall be made from the net proceeds of sale from Berry Manor and Farrell House.  The balance of the funds for payment of the monthly installments shall be from the operating revenues of the Reorganized Debtor.

9.6    **Funding the Plan—Payment of Class 9.**  Funding of the $300,000 portion of the LISC Deficiency Claim shall be paid from the net proceeds of sale from Berry Manor and Farrell House.

9.7    **Funding the Plan—Payment of Class 10.**  Funding of the $150,000 portion of the United Fidelity Bank Deficiency Claim shall be paid from the net proceeds of sale from Berry Manor and Farrell House.

9.8.    **Funding of the Plan—Payment of Class 11 and 12**.  Funding for the payment of Class 10 and 11 shall be from the operating revenues of the Reorganized Debtor.

9.7    **Operation of Business and Management of Assets After Effective Date**. Except as otherwise specifically set forth in the Plan, as of the Effective Date, the Reorganized Debtor may operate the business of the Reorganized Debtor, and may use,

acquire and dispose of any property, assets or rights free of any restrictions imposed by the Bankruptcy Code.

9.9 **Disbursements**. The Reorganized Debtor shall act as Disbursing Agent and shall make all Distributions in accordance with the Plan. To make the Distributions under the Plan, the Reorganized Debtor, as Disbursing Agent, shall distribute all property and payments called for by the Plan.

9.10 **Reserve for Disputed Claims**. On and after the Effective Date, the Distributions reserved for the holders of Disputed Claims shall not be distributed but shall be held by the Reorganized Debtor in a segregated account (the "Disputed Claims Reserve") for the benefit of the holders of the Disputed Claims entitled thereto under the Plan. Except to the extent that the Court shall have estimated under Section 502(c) of the Code or otherwise determined that a good and sufficient reserve for Disputed Claims is less than the full amount thereof, there will be deposited into the Disputed Claim Reserve an amount of cash which would have been distributed on account of all Disputed Claims if all Disputed Claims were allowed in the full amount claimed by the holder thereof.

9.11 **Resolution of Disputed Claim**.  At such time as a Disputed Claim becomes an Allowed Claim, the Distribution which would have been disbursed had the Disputed Claim been an Allowed Claim on the Effective Date shall be released from the Disputed Claims Reserve and delivered to the Disbursing Agent for delivery to the holder of such Allowed Claim within thirty (30) days. At such time as all Disputed Claims have been finally determined, the balance of the Disputed Claim Reserve not theretofore distributed shall be returned to the Reorganized Debtor.

9.12  **Unclaimed Distributions**. The Reorganized Debtor shall deposit any Unclaimed Distributions into an undivided Property Reserve to be held in trust for the benefit of the holders of Allowed Claims entitled thereto under the terms of the Plan. For a period of one hundred eighty (180) days following the date of distribution, Unclaimed Property, including any principal, interest and dividends, in cash or in kind, as may have been paid on account of any such Unclaimed Property shall be held in the Unclaimed Property Reserve solely for the benefit of the holders of Allowed Claims which have failed to claim such property. Until the expiration of one hundred eighty (180) days following the distribution date, Unclaimed Property due to the holder of an Allowed Claim shall be released from the Unclaimed Property Reserve and delivered to such holder upon presentation of proper proof of such holder to its entitlement thereto. At the end of one hundred eighty (180) days following the distribution date, the holder of Allowed Claims theretofore entitled to Unclaimed Property shall cease to be entitled thereto, and the Unclaimed Property shall then become the property of the Reorganized Debtor.

9.13  **Execution and Delivery of Documents**. The Debtor and Reorganized Debtor are authorized to execute and deliver documents and instruments as are necessary or appropriate to promote and implement Consummation of the Plan or to carry out the purposes of the Plan.

9.14  **Objections to Claims and Interests**. Any objection to any Claim shall be filed on or before thirty (30) days after the Effective Date. This time period can be extended by the Court upon request of the Debtor or the Reorganized Debtor.

9.15   **Bar Date**. The last day for filing proofs of claims against the Debtor shall be the Bar Date fixed by the Court prior to Confirmation of the Plan, except for Administrative Claims. The deadline for filing Administrative Claims, including Claims for compensation and reimbursement of professional persons employed pursuant to Court order in the Case, will be fixed by the Court.

9.16   **Retention and Enforcement of Claims**. Pursuant to Section 1123(b)(3) of the Code, the Reorganized Debtor may maintain and enforce any Claims of the Debtor or the Estate, including but not limited to recovery of all delinquent rental payments due from Lincoln South Central, as well as any claims against Dr. Leon D. Finney, Jr.

9.17   **Court and United States Trustee Fees**. Prior to the Effective Date, all fees due from the Debtor to the Clerk of the Court and all fees due from the Debtor to the United States Trustee shall be paid in full.

9.18   **Post-Confirmation Reports and Fees**. The Reorganized Debtor shall be responsible for the filing of all post-Confirmation reports required during such period with the U.S. Trustee and the payment of all Post-Confirmation fees charged or assessed against the bankruptcy estate under 28 U.S.C. § 1930.

9.19   **Vesting of Assets**. Pursuant to the provisions of sections 1141(b) and 1141(c) of the Bankruptcy Code, all of the Debtor's assets, including but not limited to all of the property of this bankruptcy estate pursuant to section 541 of the Bankruptcy Code, shall vest in the Reorganized Debtor, free and clear of all Claims, Liens, encumbrances, charges and other interests of the holders of Claims, except as otherwise provided in the Plan.

9.20    **Preservation of Debtor's Causes of Action**. Except as provided in, and unless expressly waived, relinquished, exculpated, released, compromised or settled in this Plan, the Confirmation Order or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan: (a) the Debtor shall exclusively retain and may prosecute and enforce, and the Debtor expressly reserves and preserves for these purposes, in accordance with sections 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code, any Claims, demands, rights and Causes of Action that the Debtor or its estate may hold against any person or entity and specifically including all rights to recovery of delinquent or unpaid rental payments from Lincoln South Central, (b) accordingly, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), claim splitting or laches shall apply to such reserved and preserved Claims and Causes of Action by virtue of or in connection with the Confirmation, consummation or effectiveness of the Plan; and (c) the Reorganized Debtor exclusively may pursue such reserved and preserved Claims, Causes of Action, demands and rights in the Debtor's name as appropriate, in accordance with the Debtor's best interests.

9.21    **Setoffs**. Except as otherwise provided for herein, the Reorganized Debtor may, but shall not be required to, set off against any Claim and the payments to be made pursuant to this Plan in respect of such Claim, claim(s) of any nature whatsoever the Debtor or its estate may have against the holder of such Claim, but neither the failure to do so nor the allowance of a Claim hereunder shall constitute a waiver or release by the

Debtor or its estate of any claim it may have against such holder.  Likewise, the Debtor shall reserve and preserve all of its rights of recoupment to the fullest extent possible.

## ARTICLE X

### POST-CONFIRMATION EMPLOYMENT AND
### COMPENSATION OF PROFESSIONAL

After the Confirmation Date, the Reorganized Debtor may employ, without notice, hearing or order of the Court, such attorneys, accountants and other professionals as it may desire to render services on such terms as it deems reasonable. With respect to services rendered by professional persons employed by the Reorganized Debtor after the Confirmation Date, the Reorganized Debtor shall be authorized to pay for such service, related costs and expenses without notice, hearing or order of the Court; provided however, that with respect to fees, costs and expenses of such professional persons for services rendered after the Confirmation Date in or in connection with the Case, or in connection with the Plan and incident to the Case, in the event the Reorganized Debtor disputes the reasonableness of any such fees, costs or expenses, the Reorganized Debtor shall pay such professional person only the undisputed amount, if any, and file an application with the Court to determine the reasonableness of the fees, costs or expenses which are in dispute.

## ARTICLE XI

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All executory contracts and unexpired leases of the Debtor entered into prior to the Petition Date and not rejected pursuant to Section 365 of the Bankruptcy Code prior to the Confirmation Date, shall be deemed assumed upon the Confirmation Date.

30

## ARTICLE XII

## RETENTION OFJURISDICTION BY THE BANKRUPTCY COURT

12.1   From the Confirmation date until entry of a final decree closing the Debtor's

bankruptcy case (pursuant to 11 U.S.C. §350 and Bankruptcy Rule 3022), the Bankruptcy

Court shall retain such jurisdiction as is legally permissible over this case (and all contested

matters and adversary proceedings arising therein or relating thereto) for the following

purposes:

(a)      to hear and determine (i) any and all objections to the allowance of any

Claim or Administrative Claim, (Ii) any controversy as to the validity, priority, or

classification of any Claim or Administrative Claim, or (iii) any matters which may

directly, indirectly or contingently affect the obligations of the Debtor to any creditors,

holders of Claims or other parties in interest;

(b)      to hear and determine any and all applications for compensation and

reimbursement of expenses by professionals employed for the benefit of the

bankruptcy estate;

(c)      to hear and determine (i) any and all pending motions for the

assumption, rejection and/or assignment of executory contracts and unexpired

leases, (ii) any disputes relating thereto or arising therefrom and (iii) to determine

the amount and treatment of any claims arising therefrom;

(d)      to adjudicate such contested matters and adversary proceedings as

may be pending or subsequently initiated in the Bankruptcy Court, including, but not

31

limited to, Claims and Causes of Action belonging to the Debtor and actions relating to taxes brought by the Reorganized Debtor;

(e)     to enforce and interpret the provisions of this Plan and the Confirmation Order;

(f)     to issue any injunction or other relief appropriate to implement the intent of the Plan, and to enter such further orders as may be required to enforce any injunctions or other relief issued under the Plan or pursuant to the Confirmation Order;

(g)     to modify the Plan pursuant to section 1127 of the Bankruptcy Code and the applicable Bankruptcy Rules;

(h)     to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or in the Confirmation Order as may be necessary to carry out the purpose and intent of this Plan;

(i)     to interpret and determine such other matters as the Confirmation Order may provide for, or as may be authorized under the Bankruptcy Code;

(j)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated; and

(k)     to enter an order concluding and terminating this case.

## ARTICLE XIII

## MODIFICATION AND WITHDRAWAL OF Plan

13.1    **Modification of Plan.**  The Debtor may propose modifications to this Plan at any time before Confirmation, provided that  the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and that the Debtor has complied with the section 1125 of the Bankruptcy Code (to the extent applicable to such modifications). The Debtor may propose modifications to this Plan at any time after Confirmation and before its substantial consummation; provided, however, that (i) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and (ii) the Bankruptcy Court determines, after notice and a hearing, that (A) the Plan, as modified complies with section 1129 of the Bankruptcy Code and (B) the circumstances warrant such modification.

13.2    **Withdrawal of Plan.** The Debtor reserves the right to withdraw and/or revoke the Plan at any time prior to the entry of the Confirmation Order. If the Debtor withdraws and/or revokes the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void In that event, nothing contained shall be deemed (a) to constitute a waiver or release of any Claims by the Debtor, or any other person, (b) to prejudice in any manner the rights of the Debtor, or any other person, or (c) to constitute an admission by the Debtor any other person.

## ARTICLE XVI

## MISCELLANEOUS PROVISIONS

14.1 **Headings**. Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

14.2 **Governing Law**. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Illinois applicable to contracts executed in such State by residents thereof and to be performed entirely within such State will govern the construction and implementation of this Plan, and any agreements, documents, and instruments executed in connection with this Plan.

14.3 **Binding Effect.** As of the Effective Date, the Plan shall be binding upon and inure to the benefit of the Reorganized Debtor, the holders of Claims, the holders of Equity Interests and their respective successors and assigns.

14.4 **Notices**. All notices to the Debtor in connection with the Plan shall be in writing, and shall be deemed received upon actual delivery by messenger, facsimile, e-mail or delivery by a national overnight courier to the following address:

> David R. Herzog
> HERZOG & SCHWARTZ PC.
> 77 W. Washington St. #1400
> Chicago, Illinois 60602
> Telephone: (312) 977-1600
> Facsimile: (312) 977-9936
> E-mail: drhlaw@mindspring.com

14.5 **Successors and Assigns**. The rights and obligations of any Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of the successors and assigns of such Entity.

34

14.6   **Severability**. Wherever possible, each provision of the Plan shall be interpreted in such manner as to be effective and valid under applicable law. If, however, any provision of the Plan shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the Plan. Confirmation of the Plan shall constitute a determination by the Bankruptcy Court that there is no provision contained therein that is prohibited or invalid under applicable law. Furthermore, if the Bankruptcy Court will not confirm the Plan because one or more provisions hereof are determined to be prohibited or invalid under applicable law, the Debtor may seek permission of the Bankruptcy Court to amend the Plan by deleting or modifying the offending provision.

Dated:        February 21, 2019
              Chicago, Illinois

                                       Respectfully submitted,

                                       Woodlawn Community Development, Corp

                                       By:_____/s/ David R. Herzog_____
                                              One of Its Attorneys

David R. Herzog (# 1203681)
HERZOG & SCHWARTZ PC.
Attorneys for the Debtor
77 W. Washington St. #1400
Chicago, Illinois 60602
Telephone: (312) 977-1600
Facsimile: (312) 977-9936
drhlaw@mindspring.com
Attorneys for the Debtor